IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE
ASSIGNED CALL NUMBER 423-803-8381
WITH INTERNATIONAL MOBILE
SUBSCRIBER IDENTITY
310260351651172 (Target Cell Phone # 4)

Case No. _1:20-mj-_10_____

**Filed Under Seal**

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, William B. Johnson, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 423-803-8381 with International Mobile Subscriber Identity 310260351651172 with listed subscriber of Seth MILLER but utilized by Curtis MORGAN ("**Target Cell Phone #4**"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054. **Target Cell Phone #4** is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. § 3123(b)(1).

3. I am a Law Enforcement Officer with the Hamilton County Sheriff's Office sworn in by the Sheriff of Hamilton County Tennessee. I have been so employed for the past 10 years. I am currently now assigned to the Drug Enforcement Administration ("DEA") as a Task Force Officer. In connection with my official DEA duties, I investigate criminal violations of the federal narcotics laws, including but not limited to, Title 21, United States Code, Sections 841, 843, and 846. I have also been involved in various types of electronic surveillance, the debriefing of defendants, witnesses, informants, and others who have knowledge of narcotics trafficking and of the laundering and concealing of proceeds of drug trafficking. I have had specialized training in and experience in the enforcement of laws concerning the activities of narcotics traffickers, including ten weeks of basic training in Nashville, Tennessee, as well as periodic refresher training offered by DEA, ROCIC, IPTM and other law enforcement entities. I am currently assigned to the DEA Chattanooga Resident Office. My current assignment involves the investigation of high-level drug trafficking organizations in Tennessee, Georgia and elsewhere.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) have been committed, are being committed, and will be committed by Curtis Eugene MORGAN. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

6. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

**PROBABLE CAUSE**

7. The United States, including the Drug Enforcement Administration, is conducting a criminal investigation of Megan KNIGHT, Curtis MORGAN and others regarding possible violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b).

8. Since approximately September 2019, the DEA Chattanooga, Chattanooga Police Department, Red Bank Police Department, and the Hamilton County Sheriff's Office and other federal, state, and local law enforcement agencies have been involved in an investigation involving Megan KNIGHT, Curtis MORGAN and others. Through this investigation, Megan KNIGHT was identified as a significant distributor of methamphetamine and heroin in Tennessee. As detailed below, Megan KNIGHT was identified as a source of supply for methamphetamine and heroin.

9. On Monday October 28, 2019, at approximately 11:25 pm, Hamilton County Sherriff's Office Detective William Bailey was contacted by Hamilton County Sheriff's Office Communications and requested to contact Deputy Mitchell Rice. Detective Bailey contacted Deputy Rice via telephone. Deputy Rice told Detective Bailey that he had stopped Matthew SHEPPARD in a stolen Toyota Camry and found approximately seven grams of methamphetamine in SHEPPARD's possession. Deputy Rice stated that SHEPPARD told him he wanted to talk to an investigator about Megan KNIGHT. Deputy Rice stated that SHEPPARD advised him that KNIGHT was transporting / distributing fifteen kilograms of methamphetamine. Deputy Rice stated that SHEPPARD advised that he would not talk to law enforcement after he

was in jail. Deputy Rice stated that SHEPPARD was going to be charged for the stolen vehicle and meth. Detective Bailey told Deputy Rice that he would go to the jail in the morning for an interview. On October 29, 2019, at approximately 08:29 am, Detective Bailey was contacted by Deputy Rice. Deputy Rice stated that SHEPPARD had made a $30,000 bond and Detective Bailey was not able to interview SHEPPARD further.

10. On October 31, 2019, United States Magistrate Judge Susan Lee sign a search and seizure warrant for location information for 423-681-9289 (Target Cell Phone #1 / TT1), utilized by Megan KNIGHT. DEA SA Andrew Bergren executed this warrant and started to receive location information of her telephone. As a result of this information, SA Bergren was able to verify that Megan KNIGHT traveled to Dunwoody, Georgia, on November 2, November 4, and November 15, 2019. These trips were of a short duration and KNIGHT returned to Chattanooga, Tennessee area, after these trips.

11. November 15, 2019, DEA SA Bergren was observing the electronic surveillance locations and observed that TT1 was in Atlanta, GA. The locations were in the area of Duluth, GA. Atlanta DEA responded to the area but the electronic surveillance locations were on the route back toward Chattanooga prior to them arriving. Based on this information, surveillance was established at the Budgetel Inn and Suites located at 1410 N Mack Smith Rd, East Ridge, TN., which is where KNIGHT had been staying. Your Affiant observed a white male, later identified via a HCSO mugshot as Curtis MORGAN, arrive driving KNIGHT's silver 2007 Chrysler SUV, bearing TN Plate 9M25D6. MORGAN parked in front of building 4 next to KNIGHT's 2004 grey Honda and worked on the SUV and then went inside the hotel.

12. SA Bergren observed the electronic surveillance location and it indicated that TT1 was close to Tennessee State Line. A few minutes later, your Affiant observed a white Ford Focus,

bearing GA plate RPY 0289 and registered to Lolita Marie Eason, arrive at the Budgetel Inn and Suites. KNIGHT was observed exiting the passenger side of the Ford and running into the hotel carrying a black bag. The driver, later identified as Lolita Marie EASON, by driver's license photo, exited and ran into the hotel carrying shopping bags. Next, surveillance units observed EASON exit a hotel room on the second floor, it was confirmed that KNIGHT had a room on the second floor of this building Room 4210, and get into the ford Focus and was followed to 1511 South Mack Smith Road, East, Ridge, TN. EASON pulled into the rear of the residence and stayed a short time.

13. EASON was later observed arriving back at the Budgetel Inn and Suites and went inside to the same room she left from earlier. Moments later, surveillance observed KNIGHT, EASON and MORGAN exit the room and go to the vehicles. MORGAN and KNIGHT placed bags and clothes into her grey Honda Accord and then KNIGHT and EASON, in separate vehicles left. Surveillance followed them to the Quality Inn, 4833 Hixson Pike, Hixson, TN., and surveillance was terminated on them.

14. MORGAN remained at the Budgetel Inn where he was standing out front and on the phone. After a few minutes, MORGAN went inside and returned to the same room. Moments later, I witnessed a two tone Chevy truck arrived at the Budgetel Inn and Suites and the driver, later identified Seth MILLER, exited and went into the same room as MORGAN. Not long after entering, MILLER exited the room and left the Budgetel Inn and Suites. HCSO Officer Andy Voss stopped MILLER on Ringgold Road in East Ridge, TN. As a result of the traffic stop, Deputy Voss located a small amount of suspected heroin and meth on MILLER's person.

15. During an interview with MILLER, MILLER admitted that he had been to Superior Creek Lodge (now called Budgetel Inn and Suites located at 1410 N Mack Smith Rd, East Ridge,

TN.) room 4210 and smoked meth with Jennifer BETTIS (Curtis MORGAN's girlfriend), who was staying there. MILLER advised that on November 13, 2019, he had purchased meth and heroin, got paranoid, and left his meth and heroin in the hotel room at the Bugetel Inn and Suites because he did not want to drive with it. MILLER advised that on November 15, 2019, he went back to the hotel to retrieve his drugs from BETTIS and then was stopped by law enforcement.

16. On November 18, 2019, SA Bergren observed that KNIGHT traveled again to Dunwoody, Georgia, and went to the same location as some of the prior trips. Based on this information, surveillance was established on I-75 North bound in order to intercept KNIGHT on her return from Dunwoody, Georgia. SA Bergren had a Tennessee Highway Patrol (THP) Unit on stand-by to conduct a traffic stop if necessary. Based on the location information, surveillance was able locate and identify KNIGHT and two other occupants traveling northbound on I-75 toward Chattanooga, Tennessee, in KNIGHT's vehicle. Once in Tennessee, the THP unit conducted a traffic stop on KNIGHT on I-24. Prior to the vehicle stopping, one of the passengers in her vehicle jumped out of the car, tossed a bag, and fled on foot. This subject, Perry SHELBY, was apprehended by law enforcement and the bag was located. Located in the bag was approximately five kilograms of suspected methamphetamine and located on SHELBY's person was a small amount of suspected heroin. These subjects were detained and transported for interviews. SHELBY was arrested and transported to jail on State charges. KNIGHT and EASON indicated they wanted to co-operate with law enforcement and were not charged at that time.

17. During an interview with KNIGHT, she advised that she had been purchasing three to five kilograms of methamphetamine from FNU LNU AKA "PRESENT" in Atlanta, Georgia, and his brother, FNU LNU AKA "CHI" who resides in Mexico, since September 2019. KNIGHT provided information about "PRESENT" to include his apartments, vehicles, and phone numbers.

KNIGHT advised that she communicated with FNU LNU AKA "PRESENT" and FNU LNU AKA "CHI" via telephone calls, text messages, and Facebook Messenger. KNIGHT provided the phone number of "PRESENT" as 470-416-1121.

18. As a result of this arrest, a State search warrant was executed on November 20, 2019, on 423-497-4768, the phone utilized by SHELBY. I reviewed all the messages between SHELBY and MORGAN.

-A message from November 03, 2019, from **Target Cell Phone #4** utilized by MORGAN,

*Hey bro u want me to serve jamie*

-A message from November 03, 2019, to **Target Cell Phone #4**

*Yea*

*Please fam I can't right this second*

-A message from November 03, 2019, from **Target Cell Phone #4**

*Alright I got u he wants me to front him a ball u want Me to do that to*

-A message from November 03, 2019, to **Target Cell Phone #4**

*Idk I mean I feel like hes trust worty*

-A message from November 11, 2019, to **Target Cell Phone #4**

*Aye fool u got any food?? I'm sick as fuck*

-A message from November 11, 2019, from **Target Cell Phone #4**

*Yea bra I got u*

-A message from November 11, 2019, to **Target Cell Phone #4**

*Aye*

*She said hit u up because this food post to be 28 but it's only 19*

I believe that MORGAN is discussing drugs and drug transactions this series of text messages, due to his reference to a "ball" which is code or slang for an 8-ball or 1/8 of an ounce of drugs, the reference to "food" which is code or slang for heroin. In both my training an experience, these terms are commonly used by the drug dealers to facilitate and discuss drug transactions.

19. Perry SHELBY was arrested on the above offenses and was incarcerated at the Hamilton County Jail from November 18, 2019 to present. Law enforcement was subsequently able to obtain and review calls made by Christopher AKERS (boyfriend of Megan KNIGHT) while he was incarcerated through the Hamilton County Jail Securus Phone System. The Hamilton County Jail Securus Phone System warns the parties to each call that their communications are subject to monitoring and recording.

20. On November 19, 2019, AKERS made an outgoing call to 423-803-8381 (**Target Cell Phone #4**) utilized by Curtis MORGAN, from a Nathan Hullender's SPN looking for KNIGHT. MORGAN answered the phone where he immediately turned the phone over to KNIGHT. AKERS asked why KNIGHT's phone is off and KNIGHT stated, "I don't have my phone," AKERS responded, "Who has your phone?" KNIGHT replied, "The fucking DEA has my phone Christopher."

21. On November 19, 2019, AKERS makes an outgoing call to 423-803-8381 (**Target Cell Phone #4**) from Hullender's SPN number. Curtis MORGAN answered the phone where he began to explain to AKERS that he and KNIGHT just went to get her car. MORGAN said, "ahh, we ahh, that boy was in the floor, we found it, found him." Where AKERS replied, "Did you get the car?" MORGAN explained to AKERS that they got the car and it cost $500.00 dollars to get it out. Later in the conversation, AKERS explained to MORGAN "Let her know when I call from my SPN number we do not need to talk about nothing, now this is somebody else's SPN number."

MORGAN later asked, "Did you hear me, did you hear me, what I said a minute ago?" where AKERS responded, "Yeah, you found it." MORGAN replied, "Yeah." AKERS said, "Okay, damn that's weird." MORGAN stated, "Yeah, in the same spot." AKERS later stated, "That's good at least you didn't lose it all, and to fuck them sons a bitches down there." During the conversation, AKERS questioned if they will be good and MORGAN replied, "Yeah, it's five of them" and AKERS stated, "Oh, y'all good then?"

22. On November 21, 2019, United States Magistrate Judge Susan Lee signed a search and seizure warrant for location information for 470-416-1121 (Target Cell Phone #2), utilized by FNU LNU AKA "PRESENT." This warrant was executed and DEA Chattanooga started to receive location information of this telephone. DEA Atlanta were able to conduct surveillance of "PRESENT" on a couple occasions but were not able to fully identify him, his residence or vehicles for various reasons.

23. On January 2, 2020, Perry SHELBY made an outgoing to 423-803-8381 **(Target Cell Phone #4)** utilized by MORGAN. SHELBY, who I am familiar with and I recognized by his voice, called from a booking phone in the jail. MORGAN started the call asking SHELBY, "Can you get a message to Dirty? He owes me a band." MORGAN asked SHELBY if he had talked to "JEFE." MORGAN then began to explain that "JEFE" got him for five hundred dollars. MORGAN explained that he would take care of "JEFE" because "JEFE" is PERRY's home boy. MORGAN explained to SHELBY that he told "JEFE", "Here is you four zips or give him two zips I'll even fuck with you just give me $500 bra just so you can come up off it." MORGAN continued to explain to SHELBY that MORGAN told "JEFE," "Look bra, if you have $200 bring me $200 right now and we will call it even and he still wouldn't and it got to the point where I got pissed off." MORGAN continued to explain, "Apparently you don't know who the fuck I am, you think

I'm some weak ass, weak ass mother fucker, that ahh, you ain't got a clue who I am, it ain't hard for me to reach out and touch you, I'm fucking Aryan Nation." I believe that MORGAN is facilitating drug transactions in Hamilton County, Tennessee, due to his reference to a "zip" which is code for an ounce and his use of "band" which is code for $1,000.00. In both my training an experience, these terms are commonly used by the drug dealers to facilitate and discuss drug transactions.

24. On January 10, 2020, I reviewed the toll records for **Target Cell Phone #4** and observed that MORGAN had communicated with 470-416-1121 (Target Cell Phone #2), utilized by FNU LNU AKA "PRESENT," the Atlanta source of supply, six times between December 16, 2019 and December 21, 2019 on **Target Cell Phone #4**.

**Verification of Curtis MORGAN as User of Telephone**

25. I believe that based upon the aforementioned probable cause, that **Curtis MORGAN** is using **Target Cell Phone #4** to facilitate his drug trafficking activities and in the furtherance of this drug conspiracy. I believe that obtaining the requested geo-location of **Target Cell Phone #4** through T-Mobile will allow investigators to locate the subject(s) utilizing the Target Cell Phones without jeopardizing the investigation and therefore investigators will more likely be successful in obtaining the necessary evidence to further their investigation. I further believe that the requested search warrant will enable investigators to more effectively collect evidence of the crimes being committed by the targeted organization, identify locations utilized by the organization to facilitate their criminal activities, identify co-conspirators and their locations.

26. In my training and experience, I have learned that T-Mobile is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information

about the locations of the cellular telephones to which they provide service, including E-911 Phase II data, also known as GPS data or latitude-longitude data and cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. [Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

27. Based on my training and experience, I know that T-Mobile can collect E-911 Phase II data about the location of the Target Cell Phones, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available.

28. Based on my training and experience, I know that T-Mobile can collect cell-site data about the Target Cell Phones. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as T-Mobile typically collect and retain

cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

**AUTHORIZATION REQUEST**

29. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

30. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phones would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

31. I further request that the Court direct T-Mobile to disclose to the government any information described in Attachment B that is within the possession, custody, or control of T-Mobile. I also request that the Court direct T-Mobile to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with T-Mobile's

services, including by initiating a signal to determine the location of the Target Cell Phones on T-Mobile's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

32. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phones outside of daytime hours.

33. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Additionally, this Affidavit contains statements of co-conspirators in the investigation which, if revealed at this time, may jeopardize the safety of said individuals or result in witness tampering or intimidation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
William B. Johnson
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me on January 21, 2020

_____
HONORABLE CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

IN THE MATTER OF THE SEARCH OF
THE CELLULAR TELEPHONE ASSIGNED
CALL NUMBER 423-544-5873 WITH
INTERNATIONAL MOBILE SUBSCRIBER
IDENTITY 312530211100151 AND
ELECTRONIC SERIAL NUMBER
356272104489658 (Target Cell Phone # 4)

Case No. 1:20-mj-10

**Filed Under Seal**

## ATTACHMENT A

**Property to Be Searched**

1. The cellular telephones assigned call number 423-803-8381 with International Mobile Subscriber Identity 310260351651172 with listed subscriber as Seth MILLER utilized by Curtis MORGAN ("**Target Cell Phone #4**"), whose service provider is T-Mobile, a wireless telephone service provider headquartered at 4 Sylvan Way, Parsippany, New Jersey 07054.

2. Records and information associated with the **Target Cell Phone #4** that are within the possession, custody, or control of T-Mobile: including information about the location of the cellular telephones if they are subsequently assigned a different call number.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 423-544-5873 WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY 312530211100151 AND ELECTRONIC SERIAL NUMBER 356272104489658 (Target Cell Phone # 4) | Case No. 1:20-mj- 10<br><br>**Filed Under Seal** |

## ATTACHMENT B

**Particular Things to be Seized**

I. **Information to be Disclosed by the Provider**

All information about the location of the **Target Cell Phone #4** described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the **Target Cell Phone #4**" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephones described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of T-Mobile. T-Mobile is required to disclose the Location Information to the government. In addition, T-Mobile must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with T-Mobile's services, including by initiating a signal to determine the location of the **Target Cell Phone #4** on T-Mobile's network or with such other reference points as may be reasonably

available, and at such intervals and times directed by the government. The government shall compensate T-Mobile for reasonable expenses incurred in furnishing such facilities or assistance.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

II. **Information to Be Seized by the Government**

**IF LOCATION INFORMATION IS EVIDENCE OF A CRIME:**

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 841(a)(1), 846, and 843(b) involving Curtis MORGAN or unidentified subject(s).

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.